UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN S. BENCHICK, et al.,

        Plaintiff,                   Civil Case Nos.
                                                       10-CV-12996; 11-CV-10277

vs.

                                                         HON. MARK A. GOLDSMITH

LOANSTAR LENDING, INC., et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT FDIC'S MOTION TO DISMISS**

**I.    Introduction**

Before the Court is Defendant FDIC's motion to dismiss, filed in both cases before the Court, Case Nos. 10-12996 and 11-10277. For the reasons that follow, the Court will grant the motion.

**II.    Factual and Procedural Background**

The claims at issue are based on a mortgage (brokered by Loanstar Lending, Inc., and entered into between Plaintiffs John I. and Helen Benchick and Washington Mutual Bank on June 1, 2007) for a residential property located at 22003 Beck Road in Northville, Michigan, and the eventual foreclosure on that property. D.E. 1-2 ¶1 (complaint). On June 28, 2010, the Benchicks commenced an action in Oakland County Circuit Court alleging seven counts, including violation of the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2601

et seq., and claims under Michigan statute and common law.[1] The complaint named three defendants: (i) Loanstar Lending, Inc., (Loanstar) (ii) "Washington Mutual Bank, FA, a wholly owned subsidiary of JPMorgan Chase," (Washington Mutual), and (iii) JPMorgan Chase, NA (Chase).[2] Id.

On July 29, 2010, Chase removed the matter to federal court, resulting in what is now Case No. 10-12996. U.S District Judge Lawrence P. Zatkoff declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims and remanded the Plaintiffs' state-law claims (Counts I-V and Count VII) to state court. D.E. 6 (Order of 8/11/10). On September 17, 2010, the case, with its remaining federal claim, was reassigned to the undersigned judge.

The September 2008 failure of Washington Mutual plays a significant role in this matter. On September 25, 2008, the Office of Thrift Supervision closed Washington Mutual and caused the FDIC to be appointed its receiver. D.E. 32 at 3 (reply). On that same date, the FDIC accepted the appointment and, accordingly, "succeeded to . . . all rights, titles, powers, and privileges . . . and the assets of [Washington Mutual]." 12 U.S.C. § 1821(d)(2)(A)(i). In November 2010, the FDIC first became aware of the instant suit. On December 30, 2010, by

---

[1] Specifically, the complaint alleges the following counts: Count I – violation of the Michigan Mortgage Brokers, Lender and Servicer Lending Act, Mich. Comp. Laws 445.1651 et seq., (against Loanstar Lending, Inc. only); Count II – misrepresentation (against Loanstar Lending, Inc. and Washington Mutual); Count III – fraudulent inducement (against all Defendants); Count IV – concert of action (against all Defendants); Count V – void mortgage contract due to John Benchick's mental incapacity to contract; and Count VI – violation of the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., (against all Defendants). D.E. 1-2. The complaint also lists Plaintiffs' claim for exemplary damages as a seventh count. Id.

[2] The complaint improperly named Washington Mutual Bank as a "wholly owned subsidiary of JPMorgan Chase." As Defendant FDIC explains in the motion: "Washington Mutual Bank, FA is not and never has been a wholly owned subsidiary of JPMorgan Chase Bank, N.A. JPMorgan Chase Bank, N.A. is the acquirer of certain assets and liabilities from the Washington Mutual Bank, FA receivership and Washington Mutual Bank's remaining liabilities are the responsibility of FDIC[]." D.E. 27 (in 10-12996) at 1 n.1.

stipulated order, the FDIC, in its capacity as receiver of Washington Mutual, was substituted as a named Defendant in the case. D.E. 18 (in 10-12996). The parties agreed that

> the Federal Deposit Insurance Corporation, in its capacity as Receiver of Washington Mutual Bank, is substituted in place of both "Washington Mutual Bank, FA a wholly owned subsidiary of JPMorgan Chase" and "JPMorgan Chase, NA" as to the extent Count VI seeks monetary damages. "JPMorgan Chase, NA" will remain a Defendant to the extent Count VI seeks equitable relief.

Id. In January 2011, the FDIC was similarly substituted in the state court action pending in Oakland County.[3]

On January 21, 2011, the FDIC removed the previously remanded state court action to federal court based upon the FDIC's status as a federal agency, resulting in case No. 11-10277. D.E. 1 (in 11-10277) (notice of removal).[4]

On May 9, 2011 the FDIC filed a motion to dismiss in both cases, based on the Benchicks' failure to comply with the mandatory administrative claims process set out in 12 U.S.C. §§ 1821(d)(3) – (13). The matter was fully briefed and the Court held a hearing on the motion on July 28, 2011.

### III. Analysis

#### 1. Parties' arguments

The FDIC contends that the Court lacks subject matter jurisdiction over the claims asserted against the FDIC and that, accordingly, this Court must dismiss the claims against it

---

[3] Notably, the state court substitution order also carves out two limited claims for which Chase remains a Defendant. To the extent Counts III and V of the complaint (alleging fraudulent inducement and incapacity to contract, respectively) seek equitable relief, Chase remains a Defendant. See D.E. 32-2 at 2 (in 10-12996) (Oakland County substitution order).

[4] Although the Court has agreed to consolidate cases 10-12966 and 11-10277 upon the parties' filing of a joint motion to consolidate, a motion to consolidate has not been filed.

pursuant to Federal Rule of Civil Procedure 12(b)(1).[5] Specifically, the FDIC argues that the federal courts' jurisdiction over claims against a failed institution for which the FDIC has been appointed receiver is described in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub L. No. 101-73, 103 Stat. 183. The FDIC argues that FIRREA both establishes a process for the administrative review of claims, see 12 U.S.C. 1821(d), and requires that a claimant engage in that process by "withdrawing jurisdiction" from all courts to hear such claims unless the claimant has engaged in the mandatory claims process. See 12 U.S.C. § 1821(d)(13); D.E. 27 at 6 (in 10-12966).

The Benchicks' arguments in response are not completely clear.[6] They assert that the provisions of 12 U.S.C. § 1821(d) "do not address the ability to bring legal action if there is not a claim against the assets or property held in possession of the FDIC." D.E. 30 at 10 (in 10-12996). They further assert that FIRREA's statutory framework does not apply to lawsuits that are not "brought not against the FDIC receivership, but against an assignee of an asset formerly

---

[5] As another judge of this Court has explained:

> A motion to dismiss pursuant to Rule 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction. Golden v. Gorno Bros., Inc., 410 F.3d 879, 881 (6th Cir. 2005). When a defendant challenges subject matter jurisdiction on a factual basis, the plaintiff has the burden of proving jurisdiction in order to survive the motion. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). Put differently, a motion to dismiss pursuant to Rule 12(b) (1) attacks a plaintiff's right to be in a particular court. Hamdi ex rel. Hamdi v. Napolitano, 620 F.3d 615, 619, n. 3 (6th Cir. 2010) (citation omitted). "In reviewing a 12(b)(1) motion, the Court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." Nichols v. Muskingum Coll., 318 F.3d 674, 677 (6th Cir. 2003) (citation omitted).

T. Lemkau & Assoc., Ltd. v. Sowa Tool & Machine Co., Ltd., No. 11-10039, 2011 WL 1256826 at *2 (E.D. Mich. 2011).

[6] The response brief inserts seven pages of single-space text from 12 U.S.C. § 1821(d) without elaborating further on the statute.

4

held by the FDIC and which do not seek assets of the receivership." Id. at 11.[7] According to the Benchicks, because the FIRREA administrative procedures only apply to suits "brought directly against the FDIC," id. at 11, and they have no claims against the FDIC for equitable relief, id. at 12, they are not required to engage in the administrative procedures.

At the hearing, the Benchicks appeared to argue (i) that they did not have any non-equitable claims against the FDIC; (ii) that the FDIC did not have any asset that would form the basis of an equitable relief claim; and (iii) that nevertheless, the FDIC should remain as Defendant in the case because it possesses the records of Washington Mutual pertaining to the Benchicks' claims.

### 2. Application

The Court first observes for clarification purposes that Benchicks' complaint, which has not been amended, alleges claims for both equitable relief and money damages against all Defendants. See D.E. 1-2 at 12-13 (in 10-12996) (complaint allegations seeking setting aside the sheriff's sale, declaring the mortgage foreclosure void, along with exemplary damages, costs, and attorney fees). Nevertheless, because Plaintiffs' counsel's representations at oral argument indicate that the complaint's demand for money damages may no longer accurately reflect Plaintiffs' position, given FDIC's entry into this case, the Court sets out alternative analyses below. In either case, Defendant's motion will be granted.

If the Benchicks are asserting money damage claims against the FDIC, the FDIC is clearly correct that a claimant is required to engage in FIRREA's administrative process before a

---

[7] Although, it is not completely clear, the Benchicks here may be referring to the fact that, subsequent to becoming the receiver, the FDIC apparently exercised its authority to sell (to Chase) certain assets of Washington Mutual, including the Benchicks' loan and collateral. See D.E. 32 at 2-3 (in 10-12996). However, the FDIC retained liability for claims brought by former Washington Mutual customers like the Benchicks. See id. at 3; 32-3 at 9 (9/25/08 purchase and assumption agreement between FDIC and Chase).

court may review the claim. There is binding authority on point. In <u>Village of Oakwood v. State Bank and Trust Co.</u>, 539 F.3d 373 (6th Cir. 2008), the Sixth Circuit explained FIRREA's administrative claims process:

> Upon its appointment as receiver, FDIC is required to publish notice that the failed institution's creditors must file claims with FDIC by a specified date not less than ninety days after the date of publication. 12 U.S.C. § 1821(d)(3)(B). FDIC is also required to mail notice to all known creditors of the failed institution. [12 U.S.C.] § 1821(d)(3)(C). It has 180 days from the date of filing to allow or disallow claims. [12 U.S.C.] § 1821(d)(5)(A)(i). Claimants have sixty days from the date of disallowance, or from the expiration of the 180-day administrative decision deadline, within which to seek judicial review in an appropriate United States district court. [12 U.S.C.] § 1821(d)(6)(A).

<u>Id.</u> at 384-85. In the instant case, the FDIC published the required notice in November 2010. <u>See</u> D.E. 27-3 (11/30/10 letter). The letter directed the Benchicks to submit their documentation by February 28, 2011. <u>Id.</u> The Benchicks do not dispute that they did not do so. As the <u>Oakwood</u> decision explains,

> Section 1821(d) clearly establishes a process for the administrative review of "any claim against a depository institution for which the Corporation is receiver." 12 U.S.C. § 1821(d)(6)(A)(i). Pursuant to § 1821(d)(6)(B)(ii), if a party fails to comply with the statutory time limitations, any claim that a party has "shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim."

<u>Oakwood</u>, 539 F.3d at 385. Accordingly, a claimant's failure to file an administrative claim within the period provided by § 1821(d)(6) results in the claimant having "no further rights or remedies with respect to such claim[s]." <u>Id.</u> at 386. That is the case here.[8]

---

[8] Alternatively, the Benchicks request that, if the administrative procedures are found to be applicable to them, they "should have an opportunity to submit a claim." <u>Id.</u> at 13. The Benchicks cite no authority to support their entitlement to an after-the-fact opportunity to follow the required procedures. As the Benchicks chose to take the position that exhaustion was not necessary and did not take any steps to exhaust administrative procedures before the February 28, 2011 deadline despite clearly having notice of it, rather than taking the more prudent course

To the extent that the Benchicks do not allege claims for monetary relief against the FDIC, but rather allege claims for equitable relief only, the suit must be dismissed as to the FDIC. As the Benchicks readily admitted at oral argument, the FDIC does not own their mortgage. At some point subsequent to becoming the receiver, the FDIC apparently exercised its authority to sell (to Chase) certain assets of Washington Mutual, including the Benchicks' loan and collateral. See D.E. 32 at 2-3 (in 10-12996).[9] Accordingly, the FDIC cannot provide the requested relief and thus is not the proper party for such claims.[10] Further, the FDIC's possession of information that Plaintiffs desire to obtain through discovery is not alone sufficient reason to subject it to suit. If Plaintiffs are not pursuing a claim against the FDIC, it is entitled to dismissal from this suit.

Accordingly, in either circumstance – if Plaintiffs are pursuing monetary claims against the FDIC or if they are not – the FDIC is entitled to dismissal.

---

of taking steps to exhaust and later challenging the necessity of exhaustion, they have apparently lost their opportunity to submit a claim to the FDIC.

[9] The parties have not presented the Court with a clear picture of the factual history concerning this aspect. At the hearing, counsel for Chase represented that, at some point, Bank of America owned the Benchicks' mortgage. The parties will be addressing these issues at the upcoming status conference on August 8, 2011. For the purposes of the instant motion, however, it is sufficient to state that the FDIC does not currently own the Benchicks' loan and collateral. This fact is undisputed.

[10] It appears that the proper party is Chase. As the substitution orders in both cases make clear, to the extent the Benchicks seek equitable relief, Chase remains the proper Defendant. See D.E. 32-2 at 2 (in 10-12996) (Oakland County substitution order stating that to the extent Counts III and V of the complaint, alleging fraudulent inducement and incapacity to contract, seek equitable relief, Chase remains a Defendant); D.E. 18 (in 10-12996) (this Court's substitution order stating that, to the extent Count VI seeks equitable relief, Chase remains a Defendant).

**IV. Conclusion**

For the foregoing reasons the motion to dismiss is granted.[11]  All claims in both Case No. 10-12996 and Case No. 11-10277 against the FDIC are dismissed.

Dated:  August 5, 2011            s/Mark A. Goldsmith
        Flint, Michigan           MARK A. GOLDSMITH
                                  United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2011.

                                  s/Deborah J. Goltz
                                  DEBORAH J. GOLTZ
                                  Case Manager

---

[11] The Court notes that the FDIC's motion was brought pursuant to Federal Rule of Civil Procedure 12(b)(1), meaning that it challenges this Court's subject matter jurisdiction.  However, it may be that the Benchicks' failure to exhaust the applicable administrative process amounts to a failure to complete a statutory requirement, rather than a jurisdictional bar.  See Oakwood, 539 F.3d at 386-87 (joining "every court that has addressed the issue" and concluding that § 1821(d)(13)(D) imposes "a statutory exhaustion requirement rather than an absolute bar to jurisdiction").  In any case, dismissal is clearly proper here.  Like the Oakwood court, this Court concludes that the Benchicks have "no further rights or remedies with respect to [their] unexhausted] claim[s]." Id. at 386.